**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 10 CR 655 |
| v. | ) | Judge William J. Hibbler |
| | ) | |
| SHAKER MASRI | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SHAKER MASRI'S MOTION FOR MODIFICATION OF**
**CONDITIONS OF DETENTION TO ASSIST IN TRIAL PREPARATION**

**DEFENDANT SHAKER MASRI**, by and through his attorneys, **JOSHUA L.
DRATEL, THOMAS ANTHONY DURKIN,** and **LINDA MORENO**, pursuant to the Bail
Reform Act, in particular, 18 U.S.C. §3142(i)(3) & (j), as well as the Due Process and Effective
Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution of the
United States, respectfully moves this Court for an order modifying his conditions of pre-trial
detention, by transferring him from the Special Housing Unit (hereinafter "SHU") at
Metropolitan Correctional Center Chicago (hereinafter "MCC") to the general population so that
Mr. Masri can meaningfully assist in the preparation of his defense.

This relief is necessary because the current conditions of Mr. Masri's confinement in the
SHU deprive him of:

(1)     adequate access to a computer to review the voluminous digital discovery
        materials in his case;

(2)     a "reasonable opportunity for private consultation with counsel," as directed by

1

§3142(i)(3) of the Bail Reform Act, particularly with regard to Mr. Masri's out-of-town counsel, Mr. Dratel and Ms. Moreno, and his ability to communicate with them via e-mail and telephone;  and

(3)  the same (a)  outdoor recreation time;  (b)  family visiting time;  and (c)  access to (i)  reading materials;  (ii)  writing utensils; and (iii)  commissary items provided to inmates detained pre-trial in MCC's general population.

These deprivations preclude meaningful pre-trial preparation by Mr. Masri, violate his aforementioned Fifth and Sixth Amendment rights, including his right to counsel of his choosing, and do not afford him even the requirements of the Bail Reform Act,  including the "presumption of innocence" inherent in any pre-trial detention.  *See* §3142(j).  Mr. Masri's conditions of confinement also abridge the protections provided him by the Fifth Amendment's Due Process Clause.

In support of this motion, Mr. Masri, through counsel, shows to the Court the following:

1.      Mr. Masri was arrested August 4, 2010, based upon a warrant issued on a Criminal Complaint.  That same day, Mr. Masri first appeared before Magistrate Judge Geraldine Soat Brown.  At that appearance, the Court appointed Mr. Masri counsel pursuant to the Criminal Justice Act.  Mr. Masri agreed not to contest his pre-trial detention at that time, and on August 9, 2011, Mr. Masri was ordered to remain in custody pending trial or further order of the Court.  Mr. Masri has now been in the custody of MCC, and housed in the SHU, for a full nine months.  It should be noted, however, that Mr. Masri's placement in the SHU (and the imposition on him of the restrictive rules applicable to SHU inmates) was not the result of any misconduct, or a request on his part.

2.      While this motion does not, at this time, challenge the rebuttable presumptions with respect to Mr. Masri's detention in this case, the conditions of Mr. Masri's detention in the SHU nevertheless interfere with his constitutional rights to Due Process and Effective Assistance of Counsel, and the requirements of the Bail Reform Act.

3.      Prior to the filing of this motion, counsel attempted to address the issues Mr. Masri's conditions of confinement in the SHU have presented (in particular regarding his ability to review discovery, the lack of telephone and/or e-mail access, restrictions on family visitation and outdoor recreation, and limitations on access to reading materials), by notifying MCC staff of the problems, and attempting to resolve them administratively.  When that proved ineffective (with the exception of MCC's efforts to provide Mr. Masri with the same telephone privileges as other inmates),[1] counsel solicited the assistance of the United States Attorney's Office in urging officials at MCC to transfer Mr. Masri to general population.

4.      In a January 25, 2011, letter from Mr. Durkin to Assistant United States Attorney Joel M. Hammerman, Mr. Durkin listed the specific conditions of confinement (in the SHU) to which Mr. Masri and counsel objected, and which required modification.  Mr. Durkin's letter also informed AUSA Hammerman of the corresponding infringement on Mr. Masri's constitutional and other rights as a result of those conditions.  Mr. Durkin also notified AUSA Hammerman that if the enumerated issues could not be resolved through intervention by the U.S. Attorney's Office, counsel would seek relief from the Court.  In the more than three months

---

[1] While counsel did make some progress with MCC regarding Mr. Masri's telephone privileges, Mr. Masri is still not receiving the same 300 minutes per month of telephone calls granted to other inmates.  Nor has Mr. Masri consistently been permitted to make the weekly 15-minute phone calls allotted to him as an inmate housed in the SHU.  Although MCC chooses the date and time for these calls, Mr. Masri is often told by the guard shift that they

since Mr. Durkin's letter to AUSA Hammerman, there has not been any significant improvement in Mr. Masri's conditions of confinement, and he remains in the SHU.[2]

5.     As set forth above, counsel's foremost concern with Mr. Masri's detention in the SHU is its impact on his ability to review the voluminous discovery in his case, and to prepare for his defense.  The discovery materials in Mr. Masri's case are delivered to him primarily in the form of compact discs.  Thus, he requires consistent and frequent access to a computer to review this discovery.

6.     Placement in SHU, however, means that Mr. Masri's access to a computer is more limited than if he were in the general population, where inmates are afforded far more regular computer access. All prisoners in the SHU, absent special accommodations, must share a single computer, located in the so called "law library," a multipurpose room that, apart from being the only place an inmate can review electronic discovery, is also the only place in the SHU large enough to permit more than one person at a time to meet with an inmate. Such meetings, whether legal, or with MCC staff, are frequent,. This room is understandably in high demand, and its unpredictable availability limits Mr. Masri's ability to review electronic discovery far more than any standing MCC policy regarding how many hours inmates are allotted.  In this context, Mr. Masri's limited computer access in the SHU violates his Fifth Amendment right to assist in the preparation of his defense.  This violation of Mr. Masri's rights could easily be remedied,

---

are too busy to accommodate him at his scheduled call time.  The missed calls are not rescheduled.

[2] It should be noted, however, that this does not appear to be the fault of Mr. Hammerman or his office, but instead appears to be the result of an almost sacrosanct belief that neither the Executive Branch—or the Judicial Branch for that matter—can dictate to the U.S. Bureau of Prisons. However, that is not the law, particularly in so far as it pertains to pre-trial detainees in the custody of the U.S. Marshall Service, which detainees are presumed to be innocent. See 18 U.S.C. § 3142(j) and ¶ 16, *infra*.

however, by transferring Mr. Masri to general population.

7.      In addition, as set forth *ante* at ¶¶ 12-18, placement in the SHU deprives Mr.

Masri of a "reasonable opportunity for private consultation with counsel," as directed by

§3142(i)(3), and also violates Mr. Masri's Sixth Amendment rights to Effective Assistance of

Counsel, and counsel of his choosing.   Although Mr. Masri initially was appointed counsel

pursuant to the Criminal Justice Act, he has since retained counsel, including Mr. Dratel and Ms.

Moreno, who reside in New York and Florida, respectively.  Mr. Masri anticipated that he would

be able to prepare his defense and communicate with out-of-town counsel of his choosing

primarily via telephone and e-mail.

8.      However, due only to Mr. Masri's placement in the SHU, he is not able to

correspond with counsel by e-mail.  Mr. Masri's inability to utilize e-mail necessarily threatens

to deprive him of counsel of choice by unnecessarily and arbitrarily increasing the cost of his

representation because his counsel must ultimately visit him in person more often in order to

communicate.  Also, Mr. Masri's confinement in the SHU hinders his ability to prepare for trial

with the counsel he has chosen, and to consult privately with them. *See* 18 U.S.C. §3142(i)(3)

(stating that "the judicial officer shall . . . direct that the person be afforded reasonable

opportunity for private consultation with counsel").

9.      Even when counsel attempts to visit Mr. Masri in person, the SHU delays, limits,

or eliminates, Mr. Masri's ability to consult with counsel.  By way of recent example, on April

28, 2011, Ms. Moreno was denied access to Mr. Masri because "of where he was housed."  She

was told that she could not visit him in a private room, and that she would have to return in three

hours in part because several lawyers for a different inmate housed in the SHU have a standing

daily reservation and visit their client every day.[3] Ms. Moreno was forced to contact the MCC's legal department to resolve the issue.

10.  When Ms. Moreno returned for an evening visit she was once again denied access to Mr. Masri because he was housed in the SHU. She was allowed a legal visit only after insisting a supervisor be called. The MCC's legal counsel was not available since it was after normal business hours; on that occasion it took more than an hour for Ms. Moreno to be permitted to see Mr. Masri.

11.  On April 29, 2011, Ms. Moreno returned to MCC for a visit, and was denied entry to visit Mr. Masri because, she was informed, cardigan sweaters are not allowed in the SHU. However, that article of clothing *was the very same she had worn when visiting Mr. Masri the previous day*. That new, separate issue consumed an hour and a half before it was resolved.

12.  Each and every one of these needless interruptions occurred because of Mr. Masri's confinement in the SHU and each diminishes the precious time out-of-town counsel have with Mr. Masri, not to mention needlessly and unfairly increasing the cost of representing Mr. Masri (perhaps ultimately beyond his ability to sustain), by making counsel's visits vastly unproductive.

13.  Mr. Masri's diminished telephone access exacerbates this problem. As with the problems that Mr. Masri faces regarding review of discovery, if he is moved to general population telephone access will no longer be an issue because he will be afforded access to e-

---

[3] Notwithstanding this apparent reservation, Undersigned Counsel has repeatedly been told by staff at the MCC that it is impossible to schedule a meeting with a client at the MCC and that the only way to see a client in the SHU is to show up, and hope a room is open. This constitutes a significant inconvenience for Mr. Masri's Chicago counsel, who must travel across the city, and waste an afternoon in order to visit the MCC, but it is unbearable for Ms. Moreno and Mr. Dratel, who must travel across the country to make each visit.

mail, and will receive full telephone privileges.

14.　　In addition, Mr. Masri's placement in SHU threatens the very presumption of innocence afforded pre-trial detainees, and guaranteed pursuant to §3142(j) of the Bail Reform Act, which provides that "[n]othing in [18 U.S.C. §3142] shall be construed as modifying or limiting the presumption of innocence."

15.　　By detaining Mr. Masri in the SHU even though he has not engaged in any misconduct, much less that which would trigger his placement there – nor has he requested to be housed there – and, in doing so, preventing Mr. Masri from receiving the same telephone and e-mail access,[4] family visitation,[5] outdoor recreation,[6] choice of reading materials, writing utensils,[7] and commissary items[8] granted to pre-trial detainees in general population, MCC is treating Mr. Masri as if he has already been adjudged guilty of a crime (justifying such disparate treatment).  As a pretrial detainee, Mr. Masri remains subject to the presumption of innocence.  Also, he does not have any violence in his history, and does not pose any articulable threat either to the institution or any inmates.

16.　　Yet that is precisely the improper treatment of pre-trial detainees that the Bail Reform Act proscribes.  By expressly stating in §3142(j) that the detention of an inmate pending trial must not limit the presumption of innocence, the Bail Reform Act prevents the MCC from

---

[4]　In addition, Mr. Masri's regular mail has been held from him for up to six months once it has arrived at MCC.
[5]　Due to his confinement in the SHU Mr. Masri is permitted only one contact visit every three months.  If Mr. Masri were housed in general population, *all* his visits would be contact visits.
[6]　As a SHU inmate, Mr. Masri does not currently receive *any* outdoor recreation time.  The one hour of recreation time allotted to Mr. Masri takes place in a caged room.
[7]　As a SHU inmate Mr. Masri is not even permitted to write with an ordinary pen.  Instead he must use a shortened and cumbersome pen refill when he wishes to write in ink.
[8]　Mr. Masri is not allowed to purchase foods such as noodles, tuna, and chicken breast due to his placement in the SHU.  However, if he were housed instead in general population, he would be permitted to buy these commissary items.

treating Mr. Masri as it would an inmate that has been adjudged guilty of a crime. Such

treatment of a pre-trial detainee can also amount to punishment in violation of the Due Process

Clause of the Fifth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979) (stating that

"[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime. .

. . Under such circumstances, the Government . . . may subject him to the restrictions and

conditions of the detention facility so long as those conditions and restrictions do not amount to

punishment, or otherwise violate the Constitution").

17.     Moreover, along with the disparities between treatment of inmates in the SHU

and those in the general population described previously, at ¶¶ 6-13,15, inmates confined in the

SHU are often maintained in solitary confinement, and thereby deprived of contact with other

inmates. This is the case with Mr. Masri.

18.     It is well-established in both the legal and medical communities that solitary

confinement itself imposes a punishment (which is inappropriate for pretrial detainees). For

example, Stuart Grassian, M.D., a former Professor at the Harvard Medical School of Psychiatry

(for more than 25 years) and an expert on solitary confinement, reports that "[i]t has indeed long

been known that severe restriction of environmental and social stimulation has a profoundly

deleterious effect on mental functioning[.]" Grassian, Stuart, M.D., *Psychiatric Effects of*

*Solitary Confinement*, 22 WASH. U. J.L. & POL'Y 325, 327 (2006). According to Dr. Grassian,

"[a]fter even a relatively brief period of time in such a situation [as solitary confinement] an

individual is likely to descend into a mental torpor or 'fog,' in which alertness, attention, and

concentration all become impaired." *Id.*, at 331.

19.     Thus, it is not surprising that "in June of 2006, a bipartisan national task force, the

Commission on Safety and Abuse in America's Prisons, released its recommendations after a yearlong investigation . . . call[ing] for ending long-term isolation of prisoners." Gawande, Atul, "Hellhole," *The New Yorker*, March 30, 2009, at 9, available at <http://www.newyorker.com/reporting/2009/03/30/090330fa_fact_gawande>. The Commission concluded that "[b]eyond about ten days . . . practically no benefits can be found and the harm is clear—not just for inmates but for the public as well." *Id*. Yet Mr. Masri has been in the SHU for *nine months*.

20.     Considering the significant toll Mr. Masri's placement in the SHU has already exacted on his constitutional rights and the protections afforded him by the Bail Reform Act, and the continuing toll confinement in the SHU will continue to have on his trial preparation and mental and emotional health, it is respectfully requested that Mr. Masri be moved to general population at MCC. Such a transfer would effectively solve the issues Mr. Masri faces as a result of his placement in SHU, and would not significantly change the conditions of his detention.

21.     In fact, such a request is modest (as well as completely within the discretion of the Court), considering that the Bail Reform Act contemplates temporary release of a detainee when, as here, it is "necessary for preparation of the person's defense." 18 U.S.C. §3142(i). *See e.g., Falcon v. United States Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995) ("[the Court] has the discretionary authority under 19 U.S.C. §3142(i)(3) to order [defendant] into the custody of a United States Marshal if he determines such action is necessary for preparation of his defense").

22.     Accordingly, for the reasons set forth above, it is respectfully requested that the Court grant Mr. Masri's motion for an order modifying the conditions of his pre-trial detention,

and transferring him from the SHU to the general population at MCC.

                                    Respectfully submitted,


                                    /s/Joshua L. Dratel
                                    **JOSHUA L. DRATEL,**


                                    /s/Thomas Anthony Durkin
                                    **THOMAS ANTHONY DURKIN,**


                                    /s/Linda Moreno
                                    **LINDA MORENO,**
                                    Attorneys for Defendant Shaker Masri.


**JOSHUA L. DRATEL, P.C.**
2 Wall Street, 3rd Floor
New York, New York 10005
(212) 732-0707
jdratel@joshuadratel.com

**DURKIN & ROBERTS**
2446 North Clark
Chicago, Illinois 60614
(312) 913-9300
tdurkin@durkinroberts.com

**LINDA MORENO, P.A.**
P.O. Box 10985
Tampa, FL 33679
(813) 247-4500
lindamoreno.esquire@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

Thomas Anthony Durkin, Attorney at Law, hereby certifies that the foregoing Defendant Shaker Masri's Motion for Modification of Conditions of Detention to Assist in Trial Preparation was served on May 9, 2011, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**
Attorney At Law.

**DURKIN & ROBERTS**
2446 N. Clark Street
Chicago, IL 60614
(312) 913-9300
tdurkin@durkinroberts.com