UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>SHAKER MASRI ) | No. 10 CR 655<br><br>Hon. William J. Hibbler |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR MODIFICATION
OF CONDITIONS OF DETENTION TO ASSIST IN TRIAL PREPARATIONS**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, submits this response and respectfully requests that this Court deny defendant Shaker Masri's motion for modification of the conditions of his detention.

On or about August 3, 2010, defendant Shaker Masri was charged in a criminal complaint with providing material support and resources to terrorist organizations, in violation of Title 18, United States Code, Sections 2339B(a)(1) and 2339A. R. 1.[1] On or about August 4, 2010, defendant was ordered detained pending trial, or until further order of the Court. R. 5. A federal grand jury indicted defendant on the above-referenced charges on or about September 29, 2010. R. 15. Since his arrest, defendant has been housed in the Special Housing Unit ("SHU") at the Metropolitan Correctional Center ("MCC").[2] On or about May 9, 2011, defendant filed a motion requesting a

---

[1] "R." denotes the relevant docket entry in this case.

[2] Pursuant to 28 C.F.R. § 541.22, the Federal Bureau of Prison's policy permits inmates to be placed on Administrative Detention status in the SHU when their continued presence in the general population poses a serious threat to themselves or others. 28 C.F.R. § 541.22. The decision to place an inmate on Administrative Detention status is left to the discretion of the Warden; however, according to the MCC, all SHU inmates' housing statuses are reviewed on a

Court order to move him from the SHU to general population at the MCC. R. 38.

Defendant essentially makes two arguments in support of this request:[3] First, defendant alleges that he is being denied access to counsel because he has limited telephone access and attorney visits, as well as no e-mail access. Def. Mot. at 5. Second, defendant claims that his limited computer access in the SHU prevents him from reviewing discovery. Representatives of the MCC have informed the government that, upon request and a showing of need, it can provide defendant access to a laptop in the SHU that will allow him to review discovery; thus, alleviating defendant's second argument. Accordingly, the only issue left for the Court's resolution is the determination of whether defendant's status in the SHU denies him access to counsel. As set forth below, defendant has sufficient ability to meet and confer with his counsel.

In his motion, defendant argues his telephone access is limited, his attorney access is somehow restricted, and he is unfairly denied access to e-mail. These alleged limitations are overstated, or to the extent they do exist, do not amount to a violation of his constitutional rights. In his motion, defendant does not claim that he is not able to make *any* telephone calls, but that he has "diminished telephone access," which makes it more difficult to communicate with counsel. Def. Mot. at 6. According to the MCC, inmates in the SHU are allowed one, 15-minute social call

---

weekly basis.

[3] Defendant also states that he has limited contact visits, does not have any outdoor recreation time, is not able to write with an "ordinary pen," and cannot purchase "noodles, tuna, and chicken breast" from the MCC's commissary. *See* Def. Mot. Notes 5-8. These claims, however, are not related to defendant's allegations that he is being denied access to counsel and the ability to assist in his defense. The government must defer to the Bureau of Prison's discretion in executing the internal administration of its facilities and practices, which include determining an inmate's access to the commissary and availability of particular writing utensils. *See Bell v. Wolfish*, 441 U.S. 520, 534 (1979) (finding that a detainee's "desire to be free from discomfort" during confinement "does not rise to the level" of a fundamental liberty interest).

per week, or approximately 60 minutes per month. Inmates in general population are allowed approximately 350 minutes of social calls per month. However, SHU inmates can make unlimited legal calls to their attorneys as long as they provide a reason for making such calls (*e.g.* pending court date and discussing discovery materials).[4] Here, defendant does not state whether he attempted to make, or has made, legal calls to his attorneys. Defendant only alleges that he has not been "consistently" permitted to make his weekly 15-minute social call. However, it appears that defendant has been able to make some calls, and thus it cannot be said that he has been denied access to counsel, or wholly unable to assist in his defense, for this reason.

Defendant further claims that his right to counsel has been compromised because one of his out-of-town attorneys has had difficulty visiting him in the SHU.[5] Def. Mot. at 6. While the MCC's security policies may cause some inconveniences, they are no more restrictive than those encountered by other defendants in custody. These necessary security policies are not "needless interruptions," which limit the time he has with out-of-town counsel. The government does not take a position regarding the MCC's internal security policies. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (holding that prison administrators are entitled to "wide-ranging deference in the .... execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). In this case, however, absent a showing that defendant has not been able to meet with his attorneys at all, the mere inconveinence of a delay in a meeting due

---

[4] According to the MCC, it requires less staff resources to monitor an inmate in the SHU making a legal call as opposed to an inmate in general population making such a call.

[5] According to the MCC, there are 3 attorney-client rooms, including the law library, available to approximately 30 SHU inmates. In contrast, there are only 4 attorney-client rooms available for approximately 700 inmates in general population.

to the MCC's security policies does not arise to a violation of a constitutional right.

Finally, defendant claims that his lack of e-mail access in the SHU "deprive[s] him of counsel of choice" because it "unnecssarily and arbitrarily increas[es] the cost of his representation because his counsel must ultimately visit him in person more often in order to communicate." Def. Mot. at 5. This argument is without merit. According to the MCC, inmates in general population have had e-mail access since approximately October 2009. Prior to that, inmates communicated with their attorneys by regular mail, in-person visits, and/or telephone calls. While e-mail has made it easier for attorneys and inmates to communicate with each other, e-mail is a convenience, not a right. E-mail availability does not render other kinds of communication between attorneys and inmates unreasonable, or mean that a defendant is denied access to counsel if he/she does not have e-mail access.[6] As discussed above, defendant has been able to make telephone calls and receive visits from his attorney. Defendant also has local counsel who is able to visit defendant with regularity.[7] Given that there are alternative means for defendant to exercise the rights at issue, the administrative restrictions associated with defendant's SHU confinement do not amount to constitutional violations.

---

[6] Inmates in MCC's general population do not have unrestricted access to e-mail. According to the MCC, inmates are limited to 60 consecutive minutes of e-mail use and are allowed a maximum of 600 minutes per month. Inmates are also charged for sending and printing e-mail messages. In addition, e-mail messages may not exceed 13,000 characters and cannot include attachments.

[7] At the last status hearing, local counsel informed the Court that he chooses not to visit clients at the MCC. That, of course, is a decision between counsel and client; however, it does not render MCC's security policies unconstitutional.

Accordingly, for the reasons set forth above, the goverment respectfully requests that the Court deny defendant's motion for an order transferring him from the SHU to general population at the MCC.

                    Respectfully submitted,

                    PATRICK J. FITZGERALD
                    United States Attorney

By:    s/ Nicole M. Kim
        NICOLE M. KIM
        JOEL HAMMERMAN
        Assistant United States Attorneys
        219 South Dearborn Street, Fifth Floor
        Chicago, Illinois 60604
        (312) 886-7635

**CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, L.R. 5.5, and the General Order on Electronic Case Filing (ECF), the GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR MODIFICATION OF CONDITIONS OF DETENTION, was served pursuant to the district court's ECF system as to ECF filers on May 20, 2011, to the following:

Joshual Dratel, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
(212) 732-0707

Thomas Durkin
Durkin & Roberts
2446 North Clark
Chicago, Illinois 60614
(312) 913-9300

Linda Moreno, P.A.
P.O. Box 10985
Tampa, Florida 33679
(813) 247-4500

By: /s/ Nicole M. Kim
    _____
    NICOLE M. KIM
    Assistant United States Attorney
    219 S. Dearborn Street - Fifth Floor
    Chicago, Illinois  60604
    (312) 886-7635