**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|           Plaintiff, ) | |
| ) | No. 10 CR 655 |
|       v. ) | Judge Sharon Johnson Coleman |
| ) | |
| SHAKER MASRI, ) | |
|           Defendant. ) | |

**DEFENDANT'S MOTION FOR RELEASE ON**
**CONDITIONS AND REQUEST FOR HEARING**

**DEFENDANT SHAKER MASRI**, by and through his attorneys, **THOMAS ANTHONY DURKIN, JOSHUA G. HERMAN, LINDA MORENO,** and **JOSHUA L. DRATEL** respectfully moves this Court pursuant to The Bail Reform Act of 1984, 18 U.S.C. § 3142, *et seq.*, as well as the Due Process, Effective Assistance of Counsel and Excessive Bail provisions of the Fifth, Sixth, and Eighth Amendments to the Constitution of the United States, to modify the Defendant's current detention order so as to permit Defendant's release on conditions in conformity with the aforesaid statutes and Constitutional provisions.

In support of his motion, Defendant, through counsel, shows to the Court the following:

1. Defendant was arrested on August 4, 2010, and on that date made his initial appearance before Magistrate Judge Geraldine Soat Brown. At that initial appearance, the government orally moved for Defendant's pretrial detention. Defendant, through his then appointed counsel, Attorney Matthew J. McQuaid,[1] agreed not to contest the government's motion and his detention, but did so without prejudice to his right to move at a later time for pretrial release on conditions. (Dkt. No. 5.) Accordingly, and under those terms, the

---

[1] Undersigned Counsel Durkin, Dratel, and Moreno filed their appearances on December 7, 8, and 15, 2011, respectively. (*See* Dkt. Nos. 30, 31, and 33.)

government's oral motion for pretrial detention was granted.

2. On September 22, 2011, Judge William J. Hibbler scheduled a jury trial for July 23, 2012, and noted in the corresponding docket entry that the jury trial was scheduled on that date "over defendant's objection[]" (Dkt. No. 49) (because Mr. Masri wanted an earlier trial date). The Court further wrote that it would "set an earlier trial date if its schedule will allow the same." (*Id.*)

3. As the Court knows well, Mr. Masri has not only been detained in the Metropolitan Correctional Center (the "MCC") since August 4, 2010, the day of his arrest, but was also confined in solitary conditions in the Special Housing Unit (hereinafter "SHU") from the day of his arrest until on or about May 22, 2012, when, as a result of his motions contesting the conditions of his confinement[2] and after negotiations with the United States Attorney's Office, he was released from the SHU into general population—albeit under restrictive conditions not applicable to other MCC inmates in general population, which Defendant has reserved the right to challenge.

4. Defendant's transfer from the SHU into general population ultimately, however, fails to resolve the underlying constitutional dilemmas arising from Mr. Masri's continued confinement and the corresponding adjournment of the trial date (by the Court's May 29, 2012, Order (Dkt. No. 83)) at the government's request—and that new date is merely tentative based on pre-existing scheduling conflicts. (*See* Dkt. No. 69, Govt. Motion to Extend Trial Date.)

5. Indeed, as Counsel noted in Defendant's Response to the government's motion to

---

[2] *See* Dkt. No. 38, "Defendant Shaker Masri's Motion for Modification of Conditions of Detention to Assist in Trial Preparation" (filed May 9, 2011); Dkt. No. 63, "Defendant's Renewed Motion Regarding Conditions of Pre-Trial Detention; and Request for Briefing Schedule, Discovery, and Evidentiary Hearing" (filed April 3, 2012); Dkt. No. 71, "Defendant's Memorandum in Further Support For Modification of Conditions of Pre-Trial Detention; and Request for Discovery and Evidentiary Hearing" (filed April 20, 2012).

2

extend the trial date, Mr. Masri should not have to bear the consequences of continued detention as a result of the government's failure to comply with its discovery obligations. (Dkt. No. 75, p. 8.) Thus, in light of this Court's May 29, 2012, Order continuing the trial date over the defense's strong objection, the Court should order that Defendant be released on conditions—as that is the only satisfactory solution to the dilemmas Mr. Masri confronts as a consequence of his prolonged pretrial detention. Counsel accordingly reiterate that request for release.

6. Pretrial detention is "an exceptional step" warranted in only two situations—when there are no conditions that will reasonably assure the appearance of the defendant, or assure the safety of another person in the community. *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991); *United States v. Salerno*, 481 U.S. 739, 751-52 (1987); *United States v. Portes*, 786 F.2d 758, 764-65 (7th Cir. 1985).

7. The government bears the burden of demonstrating that a defendant is either a flight risk or a danger to the community. *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985). The government must establish by a preponderance of the evidence that a defendant is a flight risk. *United States v. Hester*, No. 08-cr-848, 2011 WL 124212, *3 (N.D.Ill. Jan. 14, 2011). Also, the government must show by clear and convincing evidence that a defendant is a danger to others or to the community. *Id*.

8. Presumably the government intends to rely on the rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e)(3)(C). The presumption arises in any case in which the indictment alleges "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." However, the presumption imposes on a defendant only a burden of production, which can be met by

3

producing some "credible evidence" showing a reasonable assurance of appearance in court and/or the lack of danger to the community. Factors relevant to this inquiry are set forth in § 3142(g). The burden of persuasion, described above, relating to the risk of flight and dangerousness, remains with the government once the presumption has been rebutted. *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Diaz*, 777 F.2d 1236, 1237 (7th Cir. 1985).

      9.      Section 3142(g) sets forth the following factors that the presiding judicial officer shall consider in "determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community":

> 1) The nature and circumstances of the offense charged;
> 2) The weight of the evidence against the defendant;
> 3) The history and characteristics of the person,
>    A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residency in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearances at court proceedings
>    B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, state or local law; and
> 4) The nature and seriousness of the danger to any person or community that would be posed by the person's release.

      10.      While engaged in this analysis, courts should not discount the significance of family ties, *Torres*, 929 F.2d at 291-92, or focus solely on the crime with which the defendant has been charged. *United States v. Dominguez*, 783 F.2d 702, 707-08 (7th Cir. 1986). Further, the weight of the evidence against the defendant is the *least* significant factor, particularly in light of the statute's explicit language in § 3142(j) that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." *See also United States v.*

*Monfre*, No. 09-cr-30075, 2009 WL 1904417, *3 (S.D.Ill. July 1, 2009); *United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990).

11. Application of these §3142(g) factors here supports pretrial release for Mr. Masri, particularly in light of his continued pretrial detention, which the recent continuation of the trial date at the government's request will now prolong. Regarding the factors set forth in §3142(g)(3)(A), Mr. Masri has lived in the Chicagoland area for more than a decade, and also has family ties in the Chicagoland area, including family members with whom he can reside should the Court order his release.

12. Specifically, Counsel has been informed by Mr. Masri's cousin, Noura Almasri, that he may live with her at her residence in Aurora, Illinois, where she has lived for more than ten years. Like her cousin, Mr. Masri, Ms. Almasri is a United States citizen. She works as an Executive Assistant for Zakat Foundation of America, an international charity organization.

13. Counsel has also been advised that Defendant's mother and two sisters will be coming to the Chicago area in the month of June and would, if the Court were to require it as a condition of Mr. Masri's release, rent a house in the Chicago area in which Mr. Masri would reside with them.[3] In addition to living with family members in the Chicagoland area, any concerns regarding flight may be addressed by strict electronic monitoring under house arrest conditions, which courts have found to be an effective means of deterring flight. *See United States v. Chavez-Rivas*, 536 F.Supp.2d 962, 969 (E.D.Wis. 2008) (citing cases and observing that "[c]ourts have recognized that electronic monitoring is an effective means of deterring flight").

---

[3] Further details regarding these individuals and their plans can be provided should the Court consider this a more reasonable alternative than Aurora, IL.

14. In addition, Mr. Masri does not have any criminal history. These facts not only defeat the "presumption" in favor of detention that is raised by the charged offenses, but also demonstrate that Mr. Masri is neither a flight risk nor danger to the community.

15. Further, the government has previously argued that length of detention is not one of the factors included in the conditions of release analysis. (*See* Dkt. No. 79, Govt. Reply in Support of Motion to Extend Trial Date, p. 5). While § 3142(g) does not include length of detention as a factor, that does not eliminate it from consideration. Indeed, there is a *constitutional* imperative, beyond the statutory framework, that continues to inform release determinations.

16. In that context, if denied release, Mr. Masri will continue to face the impossible constitutional dilemma that the government has created by its inability to satisfy its discovery obligations while he languishes in extraordinarily long and unnecessary pretrial detention. Under such circumstances, any preventive detention under the Bail Reform Act exists in direct and irreconcilable tension with Mr. Masri's Constitutional rights to Due Process under the Fifth Amendment, Effective Assistance of Counsel under the Sixth Amendment, and protection against Excessive Bail under the Eighth Amendment. The Bail Reform Act's statutory detention provisions cannot trump the Constitution, and courts have recognized that the length of pretrial detention, at some point, raises constitutional issues. *See United States v. Gonzales Claudio* 806 F.2d 334, 339-40 (2nd Cir. 1986); *United States v. Portes*, 786 F.2d 758, 768 (7th Cir. 1985) (recognizing that "at some point, the length of delay may raise due process objections" but expressing no opinion "as to the length of detention which would be constitutionally impermissible.")

17. Thus, it is respectfully submitted that in addition to the standard conditions of release the following combination of additional conditions would reasonably ensure both Defendant's appearance and the safety of the community under the unique circumstances of this case:

   a. Participation in the Home Incarceration location monitoring program being restricted to 24-hour-a-day lock-down except for medical necessities and court appearances or other activities, including attorney consultations, specifically approved by the pretrial services officer; the specific location monitoring program should consist of either Radio Frequency monitoring, Passive Global Positioning Satellite monitoring, Active Global Positioning Satellite monitoring, Voice Recognition monitoring, or any combination thereof, as deemed appropriate by the Court and the pretrial services officer;

   b. Surrendering any and all passports to the Court; and,

   c. Reporting to Pretrial Services as frequently as directed, participate in any drug screening programs recommended by Pretrial Services, and refraining from possessing any firearm or controlled substance.

18. Defendant respectfully requests a detention hearing pursuant to §3142(f).

Respectfully submitted,

/s/Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**

/s/Joshua G. Herman
**JOSHUA G. HERMAN,**

/s/Linda Moreno
**LINDA MORENO,**

/s/Joshua L. Dratel
**JOSHUA L. DRATEL,**
Attorneys for Defendant Shaker Masri.

**DURKIN & ROBERTS**
2446 North Clark
Chicago, Illinois 60614
(312) 913-9300
tdurkin@durkinroberts.com

**LINDA MORENO, P.A.**
P.O. Box 10985
Tampa, FL 33679
(813) 247-4500
lindamoreno.esquire@gmail.com

**JOSHUA L. DRATEL, P.C.**
2 Wall Street, 3rd Floor
New York, New York 10005
(212) 732-0707
jdratel@joshuadratel.com

**CERTIFICATE OF SERVICE**

       Joshua G. Herman, Attorney at Law, hereby certifies that the foregoing Defendant's Motion for Release on Conditions and Request for Hearing, was served on May 30, 2012, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

       /s/ Joshua G. Herman
       **JOSHUA G. HERMAN,**
       Attorney at Law.

**DURKIN & ROBERTS**
2446 N. Clark Street
Chicago, IL 60614
(312) 913-9300
tdurkin@durkinroberts.com