FILED

JUL 30 2012

Judge Sharon Johnson Coleman
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10 CR 655 |
| vs. | ) | |
| | ) | |
| SHAKER MASRI | ) | Judge Sharon Johnson Coleman |

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant SHAKER MASRI, and his attorneys, THOMAS A. DURKIN, JOSHUA L. DRATEL, and LINDA G. MORENO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with: [Count One] knowingly attempting to provide material support and resources to a designated foreign terrorist organization, namely al-Shabaab, knowing that organization had engaged in and was engaging in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B(a)(1); and [Count Two] attempting to provide material support and resources, and to conceal and disguise the nature, location, source and ownership of such material support and resources, knowing and intending that they were to be used in preparation for and carrying out a violation of Title 18, United States Code, Section 2332a(b) (prohibiting

a national of the United States from using, threatening, attempting or conspiring to use a weapon of mass destruction outside the United States), in violation of Title 18, United States Code, Section 2339A.

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment, which charges defendant with knowingly attempting to provide material support and resources to a designated foreign terrorist organization, namely al-Shabaab, knowing that organization had engaged in and was engaging in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B(a)(1).

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

From on or about July 19, 2010 to on or about August 3, 2010, Defendant SHAKER MASRI knowingly attempted to provide material support and resources to a designated foreign terrorist organization, namely al-Shabaab, knowing that organization had engaged

in and was engaging in terrorist activity and terrorism; in violation of Title 18, United States Code, Section 2339B(a)(1).

In particular, on or about July 19, 2010, the defendant, SHAKER MASRI, a citizen of the United States, told an associate, who, then unbeknownst to MASRI, was a government cooperating source, that he (MASRI) had decided to travel abroad to engage in a jihadist conflict as a combatant. In particular, MASRI told this associate (hereinafter referred to as the "CS"), that he wanted to travel to a conflict zone to engage in jihadist fighting. MASRI explained that, to engage as a combatant in such a conflict, he had two choices: either travel to Somalia to aid al-Shabaab or to Afghanistan to aid al-Qaeda. MASRI indicated that he had decided to travel to Somalia. The CS asked MASRI if he was determined to travel for jihad. MASRI assured the CS that he was. MASRI told the CS that he only needed funds to facilitate his proposed travel. The CS responded that he had money that could be used to facilitate MASRI's proposed travel. The CS, however, placed a condition on the provision of those funds: he wanted to join MASRI in traveling to Somalia to join al-Shabaab. MASRI agreed.

MASRI and the CS met to discuss their proposed travel on multiple occasions over the following two weeks. During these conversations, MASRI and the CS discussed the logistics of their proposed travel to Somalia, including prospective travel routes, dates on which to travel, how to conceal their departure, the financial costs of the journey, the necessity of supplies, and the weapons they would need to acquire in Somalia. In their

conversations, MASRI warned the CS that they had to be careful to avoid drawing any attention to their proposed travel.

MASRI and the CS met to discuss their proposed travel on July 23, 2010 and July 28, 2010. During these meetings, MASRI suggested to the CS that, to avoid suspicion, they should avoid traveling directly towards East Africa. Rather, MASRI suggested that they travel to southern California from where they could cross the United States' border into Mexico. MASRI explained that from Mexico, they could travel onward to and through a Latin or South American country that did not work with United States' law enforcement before heading towards East Africa. When questioned by the CS concerning how they would link up with al-Shabaab once in Somalia, MASRI assured the CS that the area of southern Somalia to where they would be traveling was controlled exclusively by al-Shabaab. In response to the CS's inquiries concerning what would transpire once they arrived in Somalia, MASRI told the CS that he expected that they would be placed with a brigade of al-Shabaab's militia comprised of foreign fighters.

At the time he was planning to travel to join al-Shabaab, MASRI knew that al-Shabaab was a militant organization that had engaged in violent terrorist activity. MASRI was also aware that al-Shabaab's leadership had issued statements advocating terrorism. MASRI further knew that the United States had designated al-Shabaab as a foreign terrorist organization under United States law. In their July 23, 2010 meeting, MASRI told the CS that once they embarked on their journey, they would be "wanted" men.

MASRI and the CS met again on July 29, 2010. During this meeting, the CS and MASRI went to the CS's home where they used the CS's computer to purchase airline tickets to travel from Chicago, Illinois to Los Angeles, California. In particular, MASRI, using a debit card provided by the CS, purchased two one-way tickets to travel on Southwest Airlines flight number 2109, departing from Chicago, Illinois's Midway Airport on August 4, 2010 at 6:20 a.m. and arriving at Los Angeles, California's Los Angeles International Airport at 8:50 a.m.

When discussing their proposed travel, MASRI told the CS that before they left, he needed to discard his laptop and purchase a new computer. MASRI explained that he needed to destroy his computer because of the incriminating nature of information contained therein. The CS agreed to help. MASRI and the CS met on the afternoon of August 3, 2010. The purported purpose of their meeting was to finalize preparations for their impending journey to Somalia. The CS picked up MASRI close to his residence. They then drove to a liquor store where the CS was to collect an alleged debt that could be used to finance their trip. After allegedly obtaining $18,000 in funds from the liquor store, the CS and MASRI traveled to a retail store where they purchased a new laptop computer. MASRI was arrested immediately as he and the CS exited the store.

### Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

  a. A maximum sentence of 15 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of any term of years or life.

  b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

  a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2011 Guidelines Manual.

  b. **Offense Level Calculations**.

    i. The base offense level is 26, pursuant to Guideline § 2M5.3(a).

        ii.      Pursuant to Guideline § 2M5.3(b)(1)(E), the offense level is increased by two levels because the offense involved the provision of material support or resources with the intent, knowledge, or reason to believe that they would be used to commit or assist in the commission of a violent act.

        iii.      Pursuant to Guideline § 3A1.4(a), the offense level is increased by 12 levels because the offense was intended to promote a federal crime of terrorism.

        iv.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        v.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero. Pursuant to Guideline § 3A1.4(b), however, defendant's criminal history category is VI.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the defendant will qualify for an anticipated Sentencing Guideline offense level of 37, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guideline range of 180 months' imprisonment pursuant to Guideline § 5G1.1(a), in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorneys and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant

shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

    f.  Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

  10.  This Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of one hundred and eighteen (118) months. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth above, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth

herein, thereby rejecting this Agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this Agreement.

11. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

12. Defendant agrees that the United States may enforce collection of any fine imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

13. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss Count Two of the indictment.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

14. This Agreement is entirely voluntary and represents the entire agreement between the Acting United States Attorney and defendant regarding defendant's criminal liability in case 10 CR 655.

15. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District

of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

16. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorneys would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after

hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorneys would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorneys' alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

      c.      Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorneys have explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

17.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known matters in aggravation and mitigation relevant to sentencing.

18.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

19.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is

sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

20. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

21. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

22. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any

of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

23. Defendant and his attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

24. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: July 30, 2012

_____
GARY S. SHAPIRO
Acting United States Attorney

_____
SHAKER MASRI
Defendant

_____
JOEL M. HAMMERMAN
Assistant U.S. Attorney

_____
THOMAS A. DURKIN
Attorney for Defendant

_____
JOSHUA L. DRATEL
Attorney for Defendant

_____
LINDA G. MORENO
Attorney for Defendant