1               IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3

UNITED STATES OF AMERICA,       )  No. 10 CR 655
4                          )
              Plaintiff,   )
5                          )
           v.           )  Chicago, Illinois
6                          )  December 11, 2012
   SHAKER MASRI,             )  1:10 p.m.
7                          )
              Defendant.   )  Sentencing
8

               TRANSCRIPT OF PROCEEDINGS
9       BEFORE THE HONORABLE SHARON JOHNSON COLEMAN

10  APPEARANCES:

11  For the Government:     HON. GARY S. SHAPIRO
                          Acting United States Attorney, by
12                     MR. JOEL M. HAMMERMAN
                           MS. NICOLE M. KIM,
13                     Assistant United States Attorneys
                           219 South Dearborn Street
14                     Chicago, Illinois  60604

15  For the Defendant:     DURKIN & ROBERTS
                          2446 North Clark Street
16                     Chicago, Illinois  60614
                          BY:  MR. THOMAS A. DURKIN
17                         MR. JOSHUA G. HERMAN

18                     LAW OFFICES OF JOSHUA L. DRATEL
                          2446 North Clark Street
19                     Chicago, Illinois  60614
                          BY:  MR. JOSHUA L. DRATEL
20

21  U.S. PROBATION:        MS. DANIELLE STERN

22

23             TRACEY DANA McCULLOUGH, CSR, RPR
                    Official Court Reporter
24               219 South Dearborn Street
                       Room 1426
25              Chicago, Illinois 60604
                    (312) 922-3716

1          THE CLERK:  10 CR 655, USA versus Shaker Masri for

2     sentencing.

3          MR. HAMMERMAN:  Good afternoon, Your Honor.  Joel

4     Hammerman and Nicole Kim on behalf of the United States.

5          MR. DURKIN:  Good afternoon, Judge.  Tom Durkin,

6     Joshua Dratel, and Joshua Herman on behalf of the defendant,

7     who's present and in custody.

8          THE COURT:  All right.  Good afternoon, sir.

9          MS. STERN:  Good afternoon, Your Honor.  Danielle

10    Stern for Probation.

11         THE COURT:  All right.  And we are here for the

12    sentencing of Mr. Masri, is that correct?

13         MR. DURKIN:  Yes, ma'am.

14         MR. HAMMERMAN:  Yes, Your Honor.

15         THE COURT:  Everyone is ready to proceed?

16         MR. DURKIN:  Yes.

17         MR. DRATEL:  Yes.

18         MR. HAMMERMAN:  Yes, Your Honor.

19         THE COURT:  Mr. Masri, this Court had prepared as you

20    well know by now a presentence investigation report to assist

21    this Court in sentencing you.  On July 30th of 2012 you pled

22    guilty before this Court pursuant to a plea agreement to Count

23    1 of the indictment, which charged you with attempting to

24    provide material support and resources to Al-Shabaab, a foreign

25    terrorist organization in violation of 18 U.S.C. 2339B (a) (1).

1               The mandatory statutory provisions for this offense

2    are zero to 15 years in custody.  Supervised release is zero to

3    a life term.  And this Court had a presentence investigation

4    report prepared.  And based on that presentence investigation

5    report the offense level, total offense level is 37, and a

6    criminal history category of 6, which results in an advisory

7    guidelines that I have here was 180 months incarcerated.  And

8    the guidelines, sir, are not the only consideration for this

9    Court.  They are advisory.  And this Court has reviewed the

10   presentence investigation report.  This Court has reviewed the

11   written submissions by counsel.  This Court will hear argument

12   from each side, and also look at the recommendations presented

13   by the Probation Department.

14               This Court looks at all of that and sentencing

15   factors under Section 3553 (a) to determine what sentence is

16   sufficient in your case but not greater than necessary.  Do you

17   understand?

18               DEFENDANT MASRI:  Yes.

19               THE COURT:  All right.  Mr. Durkin, you've reviewed

20   the presentence investigation report with your client, is that

21   correct?

22               MR. DURKIN:  Yes, Judge.

23               THE COURT:  And are there any objections to the

24   presentence investigation report?

25               MR. DURKIN:  None other than the few that were put

1    forth in our pleading which was filed on November 29th.  And I

2    think the government -- the government is in agreement with the

3    first one, that, that they're not going to rely on the jail

4    house informants.

5              THE COURT:  Is that correct?

6              MR. HAMMERMAN:  Yes, Your Honor.  We would submit

7    that rather than go through a contested hearing on what an

8    informant had said, we would simply ask the Court not to rely

9    on those statements in imposing sentence this afternoon.

10             THE COURT:  All right.  Anything further?

11             MR. DURKIN:  Judge, the other two we'll simply stand

12   on what we said.  The third one is really a clarification more

13   than anything else.

14             THE COURT:  All right.  As for the government, any

15   objections to the presentence investigation report, other than

16   the change that was just stated?

17             MR. HAMMERMAN:  None, Your Honor.

18             THE COURT:  Based on the agreement on the changes to

19   the facts not including -- the government not standing on the

20   informants for the basis of the case, this Court will make that

21   adjustment.  Other than that adjustment, this Court will adopt

22   the presentence investigation report.  Upon adopting the

23   presentence investigation report, the Court asks whether there

24   is a request for either side to depart from the guidelines.

25             MR. HAMMERMAN:  Your Honor, there is.  As Your Honor

1      knows, the plea agreement between the parties included an

2      agreement as to the sentence.  The sentence that the parties

3      have agreed to is 118 months.  And so the remaining issues not

4      agreed to by the parties with respect to sentencing, there is

5      no guideline range applicable other than that for fine.  And I

6      know that -- I believe the defense has indicated that -- at

7      least the PSR indicates that the defendant does not have the

8      ability to pay a fine.  The government would not contest that

9      representation.

10             THE COURT:  Mr. Durkin.

11             MR. DURKIN:  Judge, that's correct.  Obviously this

12     is -- the agreed upon sentence under Rule 11 (c) 1 c is lower

13     than the guideline, but we think both the presentence report

14     and both sides' pleadings demonstrate a rationale under 3553

15     (a) that would include that sentence as a reasonable sentence.

16             THE COURT:  All right.  Someone want to state for the

17     record what that rationale is.

18             MR. HAMMERMAN:  Yes, Your Honor.  I mean, we believe

19     that given the offense conduct as outlined in the presentence

20     investigation report and as outlined in the government's

21     sentencing memorandum, that a sentence of 118 months as agreed

22     to by the parties is appropriate for the defendant's conduct.

23     I believe the defense is in agreement with that.

24             MR. DURKIN:  We are, Judge.

25             THE COURT:  And the Court notes that the presentation

1    by the presentence investigation -- by the Probation Department

2    notes the 180 months recommended sentence by the Probation

3    Department.  But the Court also notes the plea agreement of 118

4    months as one that's contemplated by the parties.  There is no

5    agreement to the supervised release, is that correct?

6              MR. HAMMERMAN:  That is correct, Your Honor.

7              MR. DURKIN:  That's correct.

8              THE COURT:  Is there any further argument?

9              MR. DURKIN:  Judge, the only other thing, I will

10   stand on our pleading, but just so the record is clear in

11   support of something below the guidelines, we have outlined

12   paragraphs A through E of our pleading on pages 3 to 5.  And we

13   base that on the inordinate amount of time in the special

14   housing unit, the onerous restrictions even in general

15   population, the report to the probation officer regarding Mr.

16   Masri's mental health, the recent death of his mother, and the

17   events in Syria.  And since the offense was not consummated, no

18   harm resulted.  We would simply make that part of the record in

19   support of our agreement with the recommended sentence.

20             THE COURT:  Since you brought it up, why don't you

21   tell the Court how the events in Syria impact this case.

22             MR. DRATEL:  Well, it's just -- Your Honor, it's that

23   his family -- some of his family live in Syria.  And it's just

24   been stressful for him.  It's an added stress factor for him in

25   custody that that is occurring at a time when he can't help his

1   family.  Obviously he's in a situation where that's an

2   impossibility.  And at the same time there's a dearth of

3   accurate and sometimes complete information coming out of

4   there.  So it does add to his stress about how his family is

5   fairing because of the conflict in Syria, the violence, and the

6   fact that there's not a lot of international direct press

7   coverage that he can rely on for accuracy when he talks to his

8   family.  And some of his family doesn't live there.  He doesn't

9   speak to them all the time.  Some of them live in Nigeria and

10  Jordan, and those are the ones he actually speaks to more

11  often.

12          THE COURT:  All right.  Anything further from the

13  government?

14          MR. HAMMERMAN:  Not with regards to the current

15  events in Syria, Your Honor.

16          THE COURT:  All right.  Anything further from the

17  government as to the sentencing recommendation or agreement?

18          MR. HAMMERMAN:  Yes, Your Honor.  Obviously although

19  the plea agreement contains an agreed upon sentence, important

20  components of the sentence remain for the Court to impose;

21  namely, supervised release.  As Your Honor knows, the

22  government has asked that the Court impose a term of supervised

23  release to be not less than 20 years.  We believe that that --

24  we would ask that to be at least the floor that the Court

25  consider.

1          We submit that Mr. Masri presents a risk to the

2    community, and that a period -- a lengthy period of supervision

3    is necessary to account for that risk.  The government says

4    that -- the government submits that there's significant

5    evidence of his dangerousness.  And that's why, in fact, this

6    lengthy period of supervision is necessary.  And if you look at

7    the 3553 (a) factors, his history and characteristics, the

8    nature of the offense, the need for both specific and general

9    deterrence, the need to protect the public, those factors weigh

10   in favor of a lengthy term of supervision.

11         The defendant pled guilty to attempting to join a

12   terrorist organization.  He initially indicated that he would

13   want to join either Al-Qaeda or Al-Shabaab.  And he eventually

14   chose Al-Shabaab.  But it was clear from the statements that

15   the defendant made, those recorded statements that were made by

16   one of the government's cooperating sources that -- the

17   government's cooperating source, that Mr. Masri was determined

18   to join in some jihadist conflict and to fight in that

19   conflict.  And not merely to fight, but also he wanted to die

20   in that conflict.  He told trusted associates that he expected

21   to die in this fight, that he wanted to die in a suicide

22   operation, and was recorded in a conversation with an

23   individual overseas discussing the alleged rewards that he

24   thought he would receive, heavenly rewards.

25         And it was -- based on his statements it was clear

1    that he wanted to die in such an operation, suicide operation,

2    if you will, and that this was something that he was intent on

3    following.  All of those factors, of course, Your Honor,

4    suggest that Mr. Masri is, in fact, a dangerous individual that

5    the Court should keep some lengthy period of supervision over

6    following his sentence.  He has -- Mr. Masri has advocated the

7    teachings of Al-Qaeda leaders, including Osama bin Laden and

8    Anwar Al-awlaki.  His computer was filled with jihadist

9    materials and materials that support Al-Qaeda, that support

10   jihadist causes and conflicts.

11           And although Mr. Masri has pled guilty in this case

12   to the offense of wanting to join a designated terrorist

13   organization and thereby providing material support to such an

14   organization, and he's accepted responsibility for that act,

15   there's been no rejection of that underlying ideology, that

16   underlying support for jihadist causes and fighting in a

17   jihadist cause.  And because of that, the government would

18   submit that the Court should impose a continued lengthy period

19   of monitoring following his term of incarceration as agreed to

20   by the parties.

21           There is some additional conditions that we've

22   advocated that the Court impose as a part of that supervised

23   release.  I don't think the defense has an objection to them.

24   But we would ask that the period of supervision be at least 20

25   years.

1    DEFENDANT MASRI:  Excuse me, Your Honor.  Can I talk.

2    THE COURT:  Before you talk, I want you to talk to

3  one of your lawyers.  I'll let you talk, yes.  Okay.  Talk to

4  your lawyer to the side.

5    (Brief pause.)

6    THE COURT:  All right.  Were you finished,

7  government?

8    MR. HAMMERMAN:  Yes, Your Honor.

9    THE COURT:  All right.  Is there anything else before

10  I allow your client to speak to the Court if he wishes to speak

11  to the Court on the issue of sentencing?

12    MR. DURKIN:  One second.

13    (Brief pause.)

14    MR. DURKIN:  Judge, let me just briefly respond to

15  the issue of supervised release.

16    THE COURT:  You may.

17    MR. DURKIN:  As we mentioned in our pleading, that we

18  think a period of 20 years is excessive and unnecessary.

19  Primarily he'd be close to 60 years old.  I would recommend --

20  he's 39 now --

21    DEFENDANT MASRI:  No, 29.

22    THE COURT:  No, he's 29.

23    MR. DURKIN:  He's 29 now.

24    THE COURT:  Big difference.

25    MR. DURKIN:  There is.  I guess we misspoke then.

1    Oh, I'm sorry.  With the extra -- if you count it as 10 years,

2    20 years of supervised release would get him to 60.  I don't

3    think there's any question that -- and I don't want to belabor

4    the suggestion Mr. Hammerman made that somehow he should

5    renounce any of his beliefs.  I don't think that's necessary,

6    nor do I think it's necessarily accurate that everything -- all

7    of his beliefs were jihadist.  I think he does have some

8    religious beliefs that are his own, and I don't think it's

9    necessary to comment on that right now.

10           One thing I think is perfectly clear that this was

11   the result of a young man, a younger man.  And I think the

12   statistics are overwhelmingly clear that as people get older,

13   the dangerousness decreases in almost any case.  And there

14   would be no reason to suggest this wouldn't be the case either.

15   I think it's -- I think the Court would be just as well within

16   its bounds to impose a term of supervised release in the tune

17   of 10 or 12 years.  11 years would get him past 50.  And that

18   certainly would provide a sufficiently long period of time for

19   the Court and the government to observe his behavior on

20   supervised release and probation.

21           As you know, there's any number of ways that that can

22   be increased if he is not sufficiently abiding by the

23   conditions.  I think particularly with the concept of -- that

24   the government recommends, and we don't disagree with, the

25   mental health and drug counseling, mental health treatment and

1    drug counseling and testing, that that would more than satisfy

2    the safety of the community and certainly provide the Court

3    with adequate controls where it could be assured of what's

4    going to happen, that the community would be safe.

5              THE COURT:  All right.

6              MR. DURKIN:  And Mr. Dratel wanted to add one thing.

7              MR. DRATEL:  Yes, Your Honor.  So the conditions that

8    we have not objected to I think are also important in the sense

9    of mental health counseling, drug testing.  Those are the types

10   of conditions that -- and the shorter period of supervised

11   release that we think is appropriate, can make the difference.

12   That will save all the resources for the court system and

13   everyone else for the additional 10 years that the government's

14   suggesting.  Because those are the kinds of intensive

15   programming that really make a difference on the supervised

16   release level.  They're not going to be necessary for a 20-year

17   period.  I think within the time frame that we're suggesting

18   they will have the appropriate impact to alleviate any concerns

19   that the Court has or the government has frankly in that

20   regard.

21             And also with respect to something else the

22   government said is I don't think that we sentence on the basis

23   of what's in people's libraries, what's necessarily on their

24   computers.  And we don't make them have a litmus test as to

25   their political beliefs or things like that or what they read

1    and what they take from it.  Just because something is on -- if

2    you took what's on my computer, you might get a very different

3    idea of what I might think or believe in than what I actually

4    believe in because we cover a lot of ground in what you look at

5    as a human being.  So I think that it's unfair to do that.  His

6    guilty plea I think is the most demonstrative element of it

7    having been in a lot of these kinds of cases.  His guilty plea

8    is the most demonstrative element of where he is in his own

9    development and where he's going in his development.

10          And for the Court I know it's a difficult proposition

11   to project into the future as to where people will be, but I

12   think the Court has to project on a 15-year basis.  15, 16, 17

13   years from now where will this defendant be?  And I think at

14   that point he'll be in a place where supervised release is not

15   going to be necessary.  It's just going to be a waste of

16   resources and an unnecessary impediment on him at the time.

17          MR. HAMMERMAN:  Your Honor, may I address two points

18   made by defense counsel briefly.

19          THE COURT:  You may.

20          MR. HAMMERMAN:  Just so it's clear, the government's

21   not suggesting that the Court should impose a sentence based on

22   the -- merely the reading material that Mr. Masri had in his

23   possession or even a belief that he stated that he supported at

24   a period in time.  It's those types of materials coupled with

25   his action in this case.  We're asking Your Honor to impose a

1    lengthy period of supervised release because Mr. Masri acted on

2    those beliefs.  It wasn't mere reading of other people's

3    statements and ideas.  Mr. Masri attempted to offer material

4    support to a designated terrorist foreign -- a designated

5    terrorist organization, foreign terrorist organization.  And he

6    intended to do so by offering himself in a jihadist conflict

7    and expected to die doing so, and actually stated that he

8    wished to die doing so.  It's all of that information when

9    considered together, it's that action that we believe

10   necessitates a lengthy period of supervised release.

11           With respect to Mr. Durkin's comments that -- that

12   generally speaking individuals who engage in crimes, the

13   likelihood they'll recidivate doesn't necessitate a longer

14   period of supervised release.  Congress has allowed for a very

15   select few type of offenses to have a longer period of

16   supervised release, allowing for up to life of supervision.

17   And this is one of those offenses.  And there's a reason for

18   that.  And that is because Congress has determined that there's

19   an inherent dangerousness in individuals that attempt to

20   support terrorist organizations.

21           They have recognized that these offenses are not like

22   most.  And because of that they have allowed for this longer

23   period of supervision.  And that allows the Court to ensure

24   that Mr. Masri won't, in fact, be a danger to the community

25   because the Court will have the ability to oversee his actions

1      following his release from incarceration.  So this isn't the

2      typical offense that Mr. Durkin referred to.  It's different,

3      and Congress has recognized that it's different.  And we'd ask

4      the Court utilize the ability that it has based on Congress'

5      assessment, and to impose at least 20 years of supervision.

6                  MR. DURKIN:  Can I just say one thing.

7                  THE COURT:  Last word.

8                  MR. DURKIN:  I've attempted to bite my tongue, but I

9      just want to point out, this is the same Congress that's also

10     authorized Guantanamo and lifetime detention without trial for

11     people.  So I don't find that to be a persuasive argument.  I

12     don't think there's any statistics that will support an

13     argument that somebody convicted of a terrorist offense, which

14     is a criminal offense, not a thought offense, it's a criminal

15     offense, that there is any statistics that will support a more

16     great -- greater need for supervision or people being less

17     prone to violence in their old age in a terrorism related case

18     versus any other case.

19                  And all I said is that the statistics overwhelmingly

20     support the concept in other cases, particularly violent crime,

21     that age reduces that threat of recidivism.

22                  MR. DRATEL:  And, Your Honor, if I just may add in

23     the context of the guidelines themselves.  This Congress'

24     decision about supervised released is not based on any

25     empirical evidence.  And the Supreme Court has held with

1    respect to guidelines, this isn't supervised release, but

2    treating it the same way for a second, which is with a crack

3    cocaine or a career offender guidelines, not based on any

4    empirical evidence but really just numbers picked out of the

5    air that the Court has found in Kimbrough, in Gall that those

6    guidelines are -- merit far less deference, if any deference at

7    all, by a Court in the sentencing context.

8         And, in fact, the Court is free to reject that kind

9    of guideline that is not based on the, the essential essence of

10   the origins of the guidelines, which was to take data and then

11   try to create a uniform system.  Those guidelines are not part

12   of that.  And so I think the Court has recognized that

13   sometimes Congress makes decisions that are just not

14   necessarily supportable by the evidence in terms of the

15   statistics or data.  And this is one of those situations.  So I

16   think the Court is -- has the discretion to impose a term of

17   supervised release the Court finds appropriate.

18            THE COURT:  Thank you.  All right.  Now, Mr. Masri,

19   it is your opportunity after hearing the statements of your

20   counsel, the statements of the government to address the Court

21   on the issue of sentencing.  You have that opportunity if you

22   wish to avail yourself of it.  Do you wish to speak?

23            DEFENDANT MASRI:  No, I'm -- no.  Thank you.  I'm all

24   right.

25            THE COURT:  All right.  Thank you very much then,

1   sir.  This Court has considered all of the briefings that have

2   been presented to the Court, the presentence investigation

3   report, the recommendations or agreement by counsel, the

4   statutory maximums, the advisory guidelines.  This Court also

5   looks at, as I stated earlier, Mr. Masri, the factors under 18

6   U.S.C. 3553 (a), which mandate that the Court imposes a

7   sentence that is sufficient, but not greater than necessary.

8           This Court looks first and foremost at the nature and

9   circumstances of the offense, and then also the history and

10  characteristics of you, Mr. Masri.  It is important for this

11  Court, a factor that the parties have agreed to the sentence of

12  118 months.  The Court notes that the maximum -- the

13  guidelines, rather, set forth 180 months.  And so, first of

14  all, when I look at your counsel's argument on your behalf that

15  the Court take into consideration your age and some of the

16  circumstances surrounding this, your possible mental health

17  issues, the death of your mother recently, your incarceration

18  in solitary confinement for some time.  Looking at all of that,

19  it's clear to the Court that some of that was taken into

20  consideration for you all to come to the agreement that you did

21  of 118 months, which is significantly less than the 180 months.

22          And so this Court is going to say right off that I

23  will abide by and support the agreement that has been reached

24  on the 118 months.  But it goes without saying that the offense

25  that you have pled guilty to is a serious one, a threat to this

1      country's security, to its citizens' safety.  The fact that

2      according to the offense you were willing to die in the harm of

3      others is extremely disturbing to the Court and extremely

4      serious.  And it goes without saying, again, that there's a

5      need to promote respect for our laws, for our citizens and

6      their safety.  And a just punishment for this offense is

7      important.

8              Mr. Durkin's emphasis on your youth is well taken

9      with this Court.  However, this Court does note also that just

10     because someone commits a serious offense as a youth does not

11     necessarily mean they should be punished less just for that,

12     that youth.  Because based on what you're saying, then all the

13     harm can be happening and then we still -- we give them lesser

14     sentences because of their age.  And the Court doesn't agree

15     with that.  There's a need to deter young people such as Mr.

16     Masri from this behavior.  There is a need to deter any citizen

17     or any person, citizen or not, who wishes to perform such acts,

18     attempt to perform such acts on this country, there's a need to

19     deter them from the conduct.  A need to make sure that they

20     don't engage in that conduct again.

21             This Court does not see the comparison between the

22     disparities in the crack cocaine/powder cocaine sentencing in

23     this case.  Terrorism is on another level and even though

24     Congress has its issues, the Court agrees, the Court does not

25     believe that they are unreasonable in singling out this as one

 1    of the offenses which has such a high ceiling on such a --

 2    gives the Court so much leeway on where the Court can sentence

 3    a defendant.

 4         So this Court looks at all the sentences available

 5    and notes that it is from zero to life on the mandatory

 6    supervised release.  The Court notes that the government is

 7    requesting 20 months.  The defense is requesting half of that.

 8    I'm sorry.  20 years, and the defense is requesting half of

 9    that.  The point that putting the incarceration of 118 months

10    and pairing it with the mandatory supervised release, if I took

11    the government's recommendation, would put him at 50 years,

12    around 50 years.  With all due respect, 50 years is not old.

13    And there's a lot, a lot more time --

14         MR. DURKIN:  I'm glad to hear that.

15         THE COURT:  -- left to do whatever someone would wish

16    to do and still have a lot of energy to do so.  And I mean

17    that --

18         MR. DURKIN:  Well, I think --

19         THE COURT:  I mean that with all seriousness.  I mean

20    that with all seriousness.

21         MR. DURKIN:  I think the government's gets him to 60,

22    Judge.

23         THE COURT:  The government --

24         MR. HAMMERMAN:  I believe it's less, Your Honor.

25         MR. DRATEL:  Probably about 57.

1          THE COURT:  All right.

2          MR. HAMMERMAN:  It would be about 55 years young.

3          THE COURT:  55 or 56.  All right.  Still not old.

4   And considering the type of offense, you never know -- you

5   don't have to be a youngster to be involved in this area.  So

6   the Court has looked at the age.  The Court has looked at some

7   of the other requests and requirements.  The Court also notes

8   that with mandatory supervised release, just as if things

9   aren't going well, they can be violated and kept on longer, it

10  can go the other way.  This Court has terminated mandatory

11  supervised releases earlier if everything is going well.  So it

12  can go the other way also.

13          And so this Court looking at all the factors, the

14  Court finds that not only is 118 months -- I'm sorry.  Yes.

15  118 months going to be the imprisonment for Count 1, the Court

16  also finds that there will be mandatory supervised release for

17  a period of 20 years.  This Court will require the defendant to

18  participate in a residential drug abuse program while he's in

19  the custody of the Bureau of Prisons.  The Court will not be

20  levying any fine, as the defendant does not have the ability to

21  pay.  There is no restitution.  There will be a special

22  assessment of $100.

23          Upon release from imprisonment the defendant will be

24  placed on the supervised release as stated.  And you will

25  report to the probation officer from the district in which you

1    are released.  While you are on supervised release, sir, you

2    will not be committing any other federal, state, or local

3    crimes.  You will comply with the conditions that have been

4    adopted by this Court.  You will comply with the additional

5    conditions of refraining from the use of unlawful controlled

6    substances.  You will submit to drug tests as required by the

7    U.S. Probation Department.  You will participate in the

8    collection of any DNA sample at the direction of the Probation

9    Department.  You will not possess a firearm or destructive

10   device.  And you will participate in any drug after care

11   treatment programs which the Probation Department mandates.

12          On the issue of employment or unemployment, you are

13   asked to look for a job.  And the Court notes that if you do

14   not have a job, you will be performing community service if so

15   directed by the Probation Department until you are employed.

16   You will abide by whatever limitations are suggested and set by

17   the probation officer -- office on your computer or internet

18   use.  You will submit to a search of your computer as required

19   by the Probation Department.  That includes passive as well as

20   active searches.  And you will provide the probation office

21   with access to any requested financial information.

22          Do you understand the Court's ruling, sir?

23          DEFENDANT MASRI:  I mean, I do, I do understand.

24   Now, the one on the internet and the computer that's not clear.

25   How do I get that clarified?

1           THE COURT:  It's clarifying that you will submit if

2    there is -- your use of the internet you have to go through the

3    Probation Department.  All right.  And get some clearance as to

4    the parameters, as to what you're able to use and not able to

5    use.  Do you understand?  The limitations are not there now,

6    so ...

7           DEFENDANT MASRI:  Okay.

8           THE COURT:  All right.  It will be set and it can be

9    worked out.  And, sir, I am certain as I stated earlier, you

10   know, as time goes on on this amount of time, especially on

11   supervised release, it gets adjusted depending on how your

12   period of supervised release is going.  If it's going smoothly,

13   I'm sure there will be adjustments made in your favor, and it

14   will be brought to the Court's attention.  If it isn't, then

15   that will be a problem.  Do you understand?

16          DEFENDANT MASRI:  Okay.

17          THE COURT:  All right.

18          MR. DURKIN:  Judge, is it --

19          THE COURT:  -- anything else --

20          MR. DURKIN:  Judge, is it intent on that to simply

21   have some type of ability to restrict where he could go on the

22   internet, or is that it?

23          THE COURT:  Yes.  The limitations, I'm going to leave

24   that up to probation.  As to what specific sites he can go on,

25   that will be up to probation.

1          MR. DURKIN:  But it's clear he will be permitted to

2    use the internet?

3          THE COURT:  He'll be permitted to use the internet.

4    All right.

5          MR. DURKIN:  That's fine.

6          THE COURT:  Limited.

7          MR. DURKIN:  No, that's fine.

8          THE COURT:  Yes, probation.

9          MS. STERN:  Would you like to waive the costs of

10   imprisonment and supervised release?

11         THE COURT:  Yes, he doesn't have the ability to pay.

12         MS. STERN:  And then also mental health treatment?

13         THE COURT:  Yes.

14         MS. STERN:  Thank you.

15         THE COURT:  Anything else?

16         MR. HAMMERMAN:  Yes, Your Honor.  Just a few things

17   for purposes of clarification.  I know the Court noted that the

18   guidelines were 180 and that the offense level was 37.  And I

19   may have missed it.  I assume the Court was also adopting the

20   criminal history of 6 as adjusted.

21         THE COURT:  Yes.  Yes.

22         MR. HAMMERMAN:  Okay.

23         THE COURT:  I did say criminal history 6.

24         MR. HAMMERMAN:  And I apologize if I missed that,

25   Your Honor.

1     THE COURT:  No problem.

2     MR. HAMMERMAN:  Pursuant to the sentence the Court

3 has imposed, the government also pursuant to the plea agreement

4 with the defense would like to dismiss Count 2 of the

5 indictment.

6     THE COURT:  That will be --

7     MR. HAMMERMAN:  And then obviously there's the issue

8 of advising the defendant of his appellate rights.  There has

9 been an appellate waiver and a collateral motion waiver as part

10 of the parties' plea agreement.  But I wanted to --

11     THE COURT:  That was to be the next thing.  I wanted

12 to know if there was anything else from the government.

13     MR. HAMMERMAN:  Not at this time then, Your Honor.

14     THE COURT:  All right.  Anything else from the

15 defense before I advise --

16     MR. DURKIN:  Judge, one thing with respect to

17 designations.  Are you inclined to recommend -- he'd like to be

18 as close to Illinois as possible.  I was going to suggest

19 Duluth, Minnesota or Oxford, Wisconsin.

20     THE COURT:  Any objection to any recommendation?

21     MR. HAMMERMAN:  The government takes no position

22 on the appropriate facility and would leave that up to the

23 Bureau of Prison's assessment, Your Honor.

24     THE COURT:  Obviously the Bureau of Prisons has the

25 final word, but this Court has no problem making that

1   recommendation.

2          MR. DRATEL:  And also, Your Honor, just I guess part

3   of -- I know this is complicated and more complex.  But if you

4   could just include in your recommendation that it would be a

5   facility as close as possible but that could give him the

6   programming that the Court has prescribed.  In other words, the

7   RDAP.  I think that's an important part.

8          THE COURT:  If he does not have the -- if it does not

9   have the facilities needed that the Court has just set out,

10  then obviously that would not be the appropriate place.  It has

11  to have the --

12         MR. DURKIN:  Thank you, Your Honor.

13         MR. DRATEL:  Thank you.

14         THE COURT:  All right.  And, Mr. Masri, you have a

15  right to appeal this Court's decision as to the sentencing

16  today.  All right.  Especially as to the mandatory supervised

17  release.  If you choose to so do, you may speak to your

18  lawyers, and you have 14 days in which to provide notice to the

19  Court.  Do you understand?

20         MR. HAMMERMAN:  Your Honor.

21         THE COURT:  Yes.

22         MR. HAMMERMAN:  I'm sorry to interrupt.  I don't

23  believe actually pursuant to the plea agreement he can appeal

24  the sentence.  He can oppose the voluntariness of his plea.

25         THE COURT:  Not even the -- you don't even have --

1    you left open the mandatory supervised release?  And that's not

2    either?

3           MR. HAMMERMAN:  He's waived the sentence that the

4    Court imposed.

5           THE COURT:  Is that correct, Mr. Durkin?

6           MR. DURKIN:  That's correct.

7           THE COURT:  All right.  Well, based on that, sir, you

8    do not have the right to appeal the sentence that the Court

9    just imposed, but there are certain areas that you can appeal

10    including the voluntariness of your plea.  Your lawyers will go

11    over with you all of the options you have in your appellate

12    process.  Do you understand?

13           DEFENDANT MASRI:  Okay.

14           THE COURT:  All right.  Anything else, Mr. Durkin?

15           MR. DURKIN:  Thank you, Judge.

16           MR. HAMMERMAN:  And just so it's clear, Your Honor,

17    that would be 10 days he has to do that no matter what the

18    appeal that he would want to take, correct?

19           THE COURT:  Yes.

20           MR. DURKIN:  14 days.

21           THE COURT:  14 days.

22           MR. HAMMERMAN:  14 days, Your Honor.  I apologize.

23           THE COURT:  I already said 14.  Yes.  All right.

24    Anything else?

25           MR. HAMMERMAN:  No, Your Honor.

1    THE COURT:  All right.

2         MR. DURKIN:  Thank you.

3         MR. DRATEL:  Thank you, Your Honor.

4         THE COURT:  All right.  Good luck to you, sir.

5                    CERTIFICATE

6         I HEREBY CERTIFY that the foregoing is a true,

7    correct and complete transcript of the proceedings had at the

8    hearing of the aforementioned cause on the day and date hereof.

9

10   */s/TRACEY D. McCULLOUGH*              *January 30, 2013*

11   Official Court Reporter                      Date
     United States District Court
12   Northern District of Illinois
     Eastern Division
13

14

15

16

17

18

19

20

21

22

23

24

25